UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| NEKYLE A. CHANEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:22-cv-363-CLM-GMB |
| | ) |
| DUANE OWENS, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Nekyle A. Chaney has filed a *pro se* complaint seeking injunctive relief under 42 U.S.C. § 1983 for violations of his civil rights. Doc. 1. He names Duane Owens, a nurse at the Cullman County Detention Center,[1] as the defendant. Doc. 1 at 2. Chaney also filed a motion for a preliminary injunction seeking a transfer to a federal detention center so as to receive adequate medical treatment for seizures.[2] Doc. 5; *see* Doc. 1 at 7–8. For the reasons to follow, the Magistrate Judge recommends that the court deny Chaney's motion for a preliminary injunction.

### **I. PROCEDURAL HISTORY**

Although Chaney has filed at least three previous cases that have been

---

[1] Chaney described Owens as the Medical Director of the Cullman County Detention Center. Doc. 1 at 2. Owens explains in his affidavit that he worked as a nurse at the jail on an as-needed basis and has not worked there since March 11, 2022. Doc. 15-3 at 2.

[2] Chaney is a pretrial detainee who recently entered a guilty plea. *See USA v. Chaney*, No. 4:21-cr-268-RDP-JHE, N.D. Ala. (filed Aug. 24, 2021). His sentencing is scheduled for February 28, 2023. *Id.*, Doc. 66.

dismissed as meritless, the court granted his application to proceed *in forma pauperis* because he alleged sufficient facts establishing an imminent danger of serious physical injury pursuant to 28 U.S.C. § 1915(g). Doc. 3. The court entered an order directing Owens to respond to Chaney's motion for a preliminary injunction. Doc. 7. Owens filed a response and supporting evidence (Docs. 9 & 13), then Chaney filed a reply in support of the motion. Doc. 14. This matter is now before the court on Chaney's motion for preliminary injunction.

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It may issue only when the movant has met the following four-factor test: "(1) [the movant] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Jones v. Gov. of Fla.*, 950 F.3d 795, 806 (11th Cir. 2020) (citation omitted). Chaney carries the burden of persuasion as to each of these four elements. *See United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983). A preliminary injunction is "an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites."

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng.*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citation omitted). Granting a motion for a preliminary injunction is "the exception rather than the rule." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).

### III.  PRELIMINARY INJUNCTION FACTS

Chaney's complaint alleges that he is in imminent danger because Owens has been deliberately indifferent to his medical needs in violation of his Eighth and Fourteenth Amendment rights.[3] Doc. 1. Specifically, Chaney claims that Owens has not monitored the level of epilepsy medications in his blood, increasing his risk of epileptic seizures. Doc. 1 at 5–6. Chaney contends that has been housed in the Cullman County Detention Center for six months, but the jail's medical staff has tested his medication levels only once during his incarceration. Doc. 1 at 5, 7–8. Chaney states that he has experienced four epileptic seizures at the jail, the most recent occurring on March 17, 2022. Doc. 1 at 6, 8. In his motion for preliminary injunction, Chaney requests a transfer to a federal detention center so that he can receive regular blood tests to monitor his seizure medications. Doc. 5 at 1.

The Cullman County Commission has a contract with Southern Health

---

[3] Although the standard is the same, deliberate indifference claims brought by pretrial detainees fall under the Fourteenth Amendment's Due Process Clause, while the Eighth Amendment's Cruel and Unusual Punishment Clause applies to convicted prisoners. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

Partners to provide medical care to inmates in the jail. Doc. 15-1 at 2–3. Nurse Susan Christensen, the Medical Team Administrator at the jail, conducted Chaney's initial exam when he transferred into the jail from the Marshall County Jail on September 15, 2021. Doc. 15-2 at 1, 4; Doc. 19-1 at 2–4. Chaney told her that he had a history of seizure disorder, and Christensen noted that the Marshall County Jail sent Chaney's prescription medications for epilepsy: Depakote (250 mg in the evening and 500 mg twice per day) and Trileptal (300 mg twice per day). Doc. 15-2 at 4; Doc. 19-1 at 2, 3–4. The medical staff noted Chaney's food allergies and assigned him a bottom bunk because of his seizures. Doc. 15-2 at 4; Doc. 19-1 at 5, 8. Nurse Practitioner Melissa Coefield, the Medical Director of the jail at the time, reviewed Chaney's assessment on September 23. Doc. 15-1 at 4; Doc. 19-1 at 4.

Beginning in October of 2021, Chaney visited the medical unit on a regular basis. On October 1, he asked the medical staff for extra protein in the evenings. Doc. 19-1 at 9. A nurse directed jail staff to provide Chaney with a peanut butter sandwich with his evening meal to stabilize his blood sugar. Doc. 19-1 at 9–10. On October 18, Chaney complained about migraine headaches from head trauma. Doc. 15-2 at 5; Doc. 19-1 at 11. Christensen contacted Coefield, who prescribed ibuprofen for 20 days. Doc. 15-2 at 5; Doc. 19-1 at 11–12.

On October 20, Chaney's Depakote and Trileptal pills fell on the floor as he attempted to toss them in his mouth. Doc. 19-1 at 13. He picked them up and put

them in his cup of water, then removed the pills, and again tossed them in his mouth. Doc. 19-1 at 13. The Trileptal pill fell on the floor and broke apart; Chaney pushed the pill out the door, and staff disposed of it in the medical unit. Doc. 19-1 at 13–14.

The next day, Chaney complained to Coefield that caffeine was triggering his seizures, he was having episodes of "falling out" due to hypoglycemia or diabetes, and his seizure medication levels were not being monitored. Doc. 19-1 at 15. Coefield noted that Chaney was neurologically intact and she had no acute concerns based on his physical exam. Doc. 19-1 at 15. She also told Chaney that it was not medically necessary to check Trileptal levels, but agreed to check his Depakote levels and order morning blood sugar testing for seven days. Doc. 19-1 at 15. According to Dr. Wheeler, the current Medical Director at the jail, Depakote levels should be checked through a blood test of valproic acid levels every six months unless there is a medical reason for more frequent testing. Doc. 15-1 at 9.

The medical staff checked Chaney's blood sugar from October 22 to October 28 with levels ranging from 86 to 121. Doc. 19-1 at 23. After reviewing these results, Coefield discontinued these blood sugar checks. Doc. 19-1 at 23. On October 25, Chaney had a comprehensive metabolic panel, and the test results showed his glucose level was in a normal range at 82 mg/dL. Doc. 19-1 at 19. His valproic acid level also was in a normal range at 86.4. Doc. 19-1 at 20; Doc. 15-1 at 9. Based on these results, Coefield determined that Chaney did not need any further intervention

5

treatment. Doc. 19-1 at 19.

On October 26, a nurse went to Chaney's cell to investigate a possible seizure because another inmate reported that Chaney had fallen off a stool and hit his head on the floor. Doc. 19-1 at 21. When she arrived, Chaney was sitting up, alert, and oriented with stable vital signs, and his eyes and grips were equal. Doc. 19-1 at 21. He had no memory of what had happened, no knot from a fall, and no headache or blurred vision. Doc. 19-1 at 21. The nurse told Chaney to notify medical staff if he began to have a headache or blurred vision. Doc. 19-1 at 21.

On November 13, Chaney requested medication for migraines and another nurse contacted Coefield, who prescribed Mobic. Doc. 19-1 at 24–25. On November 26, correctional staff notified the nurse that Chaney was sleeping on the top bunk even though he had been told to move back to the bottom. Doc. 19-1 at 26.

On December 1, correctional staff took Chaney to the medical unit because he was "spaced out." Doc. 19-1 at 31. Chaney was able to walk on his own, knew he was in a jail, but could not remember which county's jail. Doc. 19-1 at 31. He told the nurse that he had been sitting in the day room waiting for his lunch before this episode. Doc. 19-1 at 31. Chaney had refused his morning medication, so the nurse administered it, including his seizure medicine. Doc. 19-1 at 31. She also transferred Chaney to a cell for medical observation. Doc. 19-1 at 31–32.

On December 11, the nurse again noted that Chaney was lying on the top bunk

in his cell even though he had been counseled multiple times about the danger of being on the top bunk because of his seizure disorder. Doc. 19-1 at 33–34.

On December 13, Chaney complained of sinus pain, runny nose, elevated blood pressure, and lack of appetite. Doc. 19-1 at 35. Christensen prescribed Clonidine for high blood pressure, Chlor-Pheniramine for runny nose, and ordered blood pressure checks for five days. Doc. 19-1 at 35–36. From December 13 through December 17, the medical staff attempted to check Chaney's blood pressure, but he refused on December 14, 15, and 17. Doc. 19-1 at 37.

On March 16, 2022, another nurse saw Chaney's cellmate for a laceration on his thumb. Doc. 19-1 at 49–50. This inmate reported that he put his thumb in Chaney's mouth because was having a seizure and "biting his tongue." Doc. 19-1 at 49. Dr. Wheeler and Christensen reviewed Chaney's medication administration records and determined that he had not taken his morning epilepsy medications on 11 days in January 2022, 15 days in February, twice in March, and once in April. Doc. 15-1 at 8; 15-2 at 8; 19-1 at 40–43. Dr. Wheeler noted that Chaney was due for his next valproic acid level testing on April 25, 2022. Doc. 15-1 at 9.

In his reply in support of the motion for preliminary injunction, Chaney argues that Owens "wrongfully" compiled his "trumped-up medical record." Doc. 14 at 2. He acknowledges that his seizure medication blood levels were checked on April 26, 2022, but claims that he had "several epilepsy/seizure episodes" between

7

October 2021 and April 2022. Doc. 14 at 2–3, 7. In support of this claim, Chaney provided the dates and reference numbers for medical requests or grievances that he claims to have submitted through a jail kiosk: (1) five requests on September 22, 23, 28, and 29, 2021; (2) three requests on October 13 and 14, 2021; (3) one grievance on October 14, 2021; (4) two requests on October 15, 2021; (5) one grievance on October 21, 2021; (6) one request on October 29, 2021; (7) one request and one grievance on March 18, 2022; and (8) one request on March 19, 2022. Doc. 14 at 4–5. He claims he received "nonchalant" or late responses from Owens and other medical personnel and that these kiosk reference numbers will prove that he had "underreported/underdocumented" seizures. Doc. 14 at 4, 8. But Chaney does not allege that he actually had seizures on any of these dates. Instead, he claims that he "experienced a seizure for three consecutive days—on 04/29/2022, 04/30/2022, and 05/01/2022." Doc. 14 at 8.

### IV.  ANALYSIS

The United States Supreme Court has held that only deliberate indifference to serious medical needs is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must present evidence showing that he had a serious medical need, that the defendant acted with deliberate indifference in responding or failing to respond to that need, and that the defendant's wrongful actions caused an injury. *See Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir.

2016).

This standard requires the plaintiff to establish facts that meet both an objective and a subjective component. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). An objectively serious medical need constitutes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). To satisfy the subjective component, the plaintiff must allege that the defendant acted with "deliberate indifference" to a medical need. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Deliberate indifference has three requirements: "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" *Id.* (quoting *Farrow*, 320 F.3d at 1245). Thus, a plaintiff must demonstrate a "defendant actually knew of 'an excessive risk to inmate health or safety' and disregarded that risk." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

When a deliberate indifference claim "turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" *Blanchard v. White County Det. Ctr. Staff*, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1504

(11th Cir. 1991)). However, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." *Brennan v. Thomas*, 780 F. App'x 813, 821 (11th Cir. 2019) (quoting *Melton*, 841 F.3d at 1224). Rather, deliberate indifference stems from an intentional failure to provide medical care. *See McElligot v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Where, as here, the dispute concerns the adequacy of care provided, courts should be hesitant to question the medical judgments rendered by providers. *Lloyd v. Van Tassell*, 318 F. App'x 755, 760 (11th Cir. 2009).

Moreover, mere negligence in diagnosing or treating a medical condition is insufficient to support a constitutional claim. *See Adams v. Poag*, 61 F.3d 1537, 1543–44 (11th Cir. 1995). Similarly, an accidental or inadvertent failure to provide medical care does not constitute a wrong under the Eighth Amendment. *See Bingham*, 654 F.3d at 1176; *Estelle*, 429 U.S. at 105–06. "Medical treatment violates the Eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris*, 941 F.2d at 1505 (citation omitted). To pass constitutional muster, the care received does not have to be "'perfect, the best obtainable, or even very good.'" *Id*. at 1510 (citation omitted).

As an initial matter, Chaney incorrectly described Owens as the Medical

10

Director of the jail. Doc. 1 at 2. The record reflects that Owens worked only as a nurse at the jail on an as-needed basis and has not worked there since March of 2022. Doc. 15-3 at 2, 4. As a low-level employee of the jail, there is no evidence Owens has the ability to make final decisions about Chaney's detention status or to transfer him to a federal facility. This is the only relief Chaney seeks in the motion for preliminary injunction, and the motion is due to be denied for this reason alone.

Leaving aside Chaney's decision to sue the wrong defendant, he cannot show a substantial likelihood of success on the merits because the record evidence does not support his claim that the health care providers at the jail acted with deliberate indifference to his medical needs. It is undisputed that Chaney's seizures constitute a serious medical need. But the jail's medical providers were not deliberately indifferent to his condition. Instead, Chaney's medical records reveal that he visisted the medical unit and received medications, lab tests, and monitoring on a regular basis. *See* Doc. 19–1 at 2–5, 7, 9–47. His prescriptions for Depakote and Trileptal transferred with him from the Marshall County Jail, and he continued these antiseizure medications at the Cullman County Detention Center. Doc. 15-2 at 4; Doc. 19-1 at 3–4. He also received regular bloodwork to monitor his glucose levels and his valproic acid level. Doc. 19-1 at 19, 23.

Chaney's primary contention is that his blood levels should be tested more frequently. Doc. 1 at 5, 7–8. But the only evidence in the record establishes that it

11

is not medically necessary to check his Trileptal levels (Doc. 19-1 at 15) and that his Depakote levels should be checked only every six months. Doc. 15-1 at 9. The medical staff tested Chaney's valproic acid level on October 25, 2021 at 86.4 mg/L, which is in the normal range. Doc. 19-1 at 19–20. Coefield therefore determined that no intervention was needed. Doc. 19-1 at 19. Dr. Wheeler agreed that there was "no medical reason to test [Chaney's] valproic acid level more often than in six-month intervals," noting that that he had been seizure free for five months from the end of October 2021 to March 16, 2022. Doc. 15-1 at 9. Dr. Wheeler also mentioned that Chaney's next valproic acid level test was scheduled for April 25, 2022 (Doc. 15-1 at 9), and Chaney conceded that the testing occurred on April 26, 2022. Doc. 14 at 2–3, 7.

And while Chaney alleges that he continues to experience epileptic seizures, this fact does not establish deliberate indifference. This is particularly true when considering the undisputed evidence that Chaney often refuses to take his seizure medication. Doc. 15-1 at 8; Doc. 15-2 at 8; Doc. 19-1 at 40–43. Deliberate indifference stems from an intentional failure to provide medical care. *See McElligot*, 182 F.3d at 1255. There is no evidence that the medical treatment here "is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris*, 941 F.2d at 1505 (citation omitted). Instead, the evidence amounts to Chaney's disagreement with the medical

staff about how they should treat him.  But a difference of opinion between Chaney and the medical professionals does not establish a claim of deliberate indifference. *See Brennan*, 780 F. App'x at 821.

Because Chaney has failed to show a substantial likelihood of success on the merits, the court will not consider the remaining factors in the preliminary injunction analysis. *See GeorgiaCarry.Org*, 788 F.3d 1318 at 1329 (citing *ACLU of Fla., Inc. v. Miami–Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (holding that a "[f]ailure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits").

## V.  RECOMMENDATION

For these reasons, the Magistrate Judge RECOMMENDS that Chaney's motion for preliminary injunction (Doc. 5) be DENIED.

## VI.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days.**  The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection.  The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

DONE and ORDERED on January 5, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE